UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DONNA S. HALL,

                    Plaintiff,

v.                                                    Case No.  5:04-cv-386-Oc-GRJ

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits.  (Doc. 1.)  The Commissioner has answered (Doc. 4) and both parties have filed briefs outlining their respective positions.  (Docs. 11 & 16.) On September 8, 2005 the Court held oral argument during which the parties were given an opportunity to present their respective positions.  For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. §405(g).

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on June 14, 2001, claiming a disability onset date of November 19, 2000. (R. 48-50.)[1]  Plaintiff's application was denied initially (R. 44-45), and upon reconsideration. (R. 39-40.)  Thereafter, Plaintiff timely pursued her administrative remedies available

---

[1] Plaintiff also filed an Application for Widow's Insurance Benefits on November 1, 2001, after her husband's death on October 18, 2001.  (R. 364-66.)

before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").  (R. 38.)  The ALJ conducted Plaintiff's administrative hearing on May 23, 2003. (R. 373-91.)   The ALJ issued a decision unfavorable to Plaintiff on October 9, 2003 (R. 12-19.)  Plaintiff timely filed a request for review with the Social Security Administration's Office of Hearings and Appeals.  (R. 30-31.)  The Appeals Council denied Plaintiff's request for review on July 1, 2004.  (R. 6-8.)  On August 23, 2004, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

### III. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking

---

[2] *See* 42 U.S.C. § 405(g).

[3] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when

---

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

## IV. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Plaintiff was born on June 23, 1946 and was fifty-six (56) years old at the time of the hearing.  (R. 48, 377.)  Plaintiff did not graduate from high school but obtained her GED in the 1980's. (R. 377.)  She has worked as a plastics packer, food service assistant, grove worker, data entry clerk, school food service manager, and as a secretary in a doctor's office. (R. 54-61, 92-99, 102.)  Plaintiff contends that she has

---

[18] <u>Phillips v. Barnhart</u>, 357 F. 3d 1232, 1243 (11th Cir. 2004); <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 (11th Cir. 1996); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u> at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] <u>Walker</u> at 1003.

[20] <u>Wolfe</u> at 1077-78.

[21] *See id.*

[22] *See* <u>Doughty</u> at 1278 n.2.

5

been unable to work since November 19, 2000 due to arthritis; fibromyalgia; injuries to her knees, back, hands, and elbows; and carpal tunnel syndrome in her hands and arms, all of which cause constant pain in her back, hips, legs, knees, ankles, feet and elbows, headaches and numbness in her hands and arms.  (R. 68-71, 101.)

Plaintiff suffered a work-related injury on December 3, 1997, when she fell, injuring her left knee, left elbow and right wrist.  (R. 115-16.).  In conjunction with her claim for worker's compensation, Plaintiff was seen by Edward Demmi, M.D. and Mario Medero, M.D. (R. 150-68).  As of October 12, 2000, Dr. Medero noted that Plaintiff was at maximum medical improvement and that her restrictions were no lifting, pushing or pulling greater than 30 pounds.  (R. 153.)  In November, 2000, Plaintiff fractured her right patella. (R. 328-33. ) On April 9, 2001,  Dr. Demmi diagnosed low back pain and right knee fracture and noted that Plaintiff had an antalgic gait[23] and was walking with a cane. (R. 150.)

On June 5, 2001, Plaintiff was seen by orthopaedist, Richard Smith, M.D. for a second opinion related to her worker's compensation claim. (R. 168-172.) Plaintiff reported constant lower back pain which she rated as ten out of ten with radiation down her left leg with numbness and tingling.  (R. 169.)  Plaintiff also reported that her knees occasionally give out, that she had increased pain in her right knee and that she has to shift her weight from side to side to maintain relief. (*Id.*) Dr. Smith noted that Plaintiff weighed 280 pounds, but that she ambulated with a normal reciprocal gait. (R. 170.)  Dr. Smith opined that Plaintiff has low back pain secondary to a lumbar strain

---

[23] A manner of walking or gait which aims to shorten as much as possible the length of time that a painful limb must support the weight of the body.  *See* 1-A Attorneys' Dictionary of Medicine 7780.

and bilateral knee pain due to the fracture.  (R. 172.)   Dr. Smith concluded that Plaintiff reached maximum medical improvement with a 7% impairment rating and recommended continued pain management and "[n]o lifting over 30 pounds.  No prolonged standing or sitting.  No squatting or climbing."  (R. 172.)

From July 14, 1998 through June 11, 2001, Plaintiff was treated by physicians at Lake Primary Care Associates, including Chuong H. Vu., M.D. (R. 204 -237).  Plaintiff's diagnoses during this period included: depression, anxiety, rheumatoid arthritis, osteoarthritis, hypertension, fibromyalgia, obesity and ulcerative colitis, right knee fracture, post-menopausal syndrome, migraines, hypothyroidism and weight gain.  On October 30, 2001, Dr. Vu wrote that Plaintiff has an "underlying history of ulcer colitis, hyperthyroidism, generalized osteoarthritis, rheumatoid arthritis, fibromyalgia and depression.  All of these conditions are aggressive and debilitating."  (R. 203.)  Dr. Vu also noted that the death of Plaintiff's husband is "[t]he contributing factor to her decreasing disability."  (*Id.*)[24]

Plaintiff was treated by rheumatologist, Kenneth Stark, M.D. from September 1996 through October 11, 2001.  (R. 259-71).  Dr. Stark diagnosed Plaintiff with inflammatory polyarthritis, active fibromyalgia, diffuse osteoarthritis, ulcerative colitis, dyspepsia, and labile blood pressure.  (R. 259-67.)  In his February 24, 1999 progress note, Dr. Stark noted that Plaintiff has "significant evidence of fibromyalgia activity."  (R. 265.)   In his August 15, 2001 progress notes, Dr. Stark noted that Plaintiff has reduced functional capacity but "doesn't have the [financial] resources to get meds or do work

---

[24] Presumably, Dr. Vu meant "increasing disability."

up." (R. 259.)  On October 30, 2001, Dr. Stark wrote that Plaintiff "is permanently disabled with Inflammatory Polyarthritis, Fibromyalgia and Diffuse Osteoarthritis.  All are progressive diseases and debilitating." (R. 258.)

From January 2001 through April 2003, Plaintiff was treated by various health care providers at Community Primary Health Care Clinic.  (R. 335-357.)   During this time period, Plaintiff was diagnosed with bronchitis, ulcerative colitis, gastritis, osteoarthritis, positive H. Pylori, hypertension, obesity, fibromyalgia, vertigo, painful varicose veins, gastro-esophageal reflux disease, depression, sinusitis, hypothyroidism, urinary tract infection and neck pain with radiculopathy. (R. 336, 339-41, 343, 345, 347-50, 353, 354, 356.)  In June 2002, it was noted that Plaintiff "can't walk -- uses cane." (R. 348.)  In April 2003, Plaintiff was prescribed a four-pronged cane after she reported falling when her "hip/knee just gave away." (R. 356.)

On July 26, 2001, at the request of the State agency, Plaintiff underwent a consultative psychological evaluation with David Cox, Ph.D.  (R. 186-87.)  Cox noted that Plaintiff was pleasant, cooperative, alert and oriented.  He noted that Plaintiff used a cane to assist in ambulation.  Cox further noted that Plaintiff admitted to passive suicidal ideation, without intent or plan and she endorsed a number of neurovegetative symptoms associated with depression, including anergia, crying spells, and social withdrawal.  Plaintiff reported her mood as "down and out a lot."  Cox noted that Plaintiff's affect was tearful and she cried as she detailed her history.  Cox diagnosed Plaintiff with Pain Disorder associated with both psychological factors and a general medical condition and Major Depression.  Cox concluded that Plaintiff "reported significant pain and symptoms of depression which would likely preclude her from

sustaining and maintaining gainful employment.  That combined with her physical/medical status certainly seems to preclude competitive employment for [Plaintiff]."  Cox rated Plaintiff's ability to follow simple one and two step commands as average and her abilities to interact with others; maintain attention, concentration and pace; withstand the stress of a routine workday; and adapt to change as low average.

Diagnostic tests and laboratory reports confirm chronic degenerative changes at the C5-C6 disc level and left ankle sprain in April 1999  (R. 254-56), spondylosis at C5-6 and C6-7 on May 30, 2000  (R. 246), spondylosis at C4-5, loss of stature for the interspace at C3-4 and C5-6 and straightened lordosis associated with current or chronic strain on October 24, 2000.  (R. 242.)  An MRI of the brain in November 2001 showed empty sella turcica.  (R. 334.)

There are two physical residual function capacity ("RFC") assessment of record which were performed by non-examining state agency physicians.  James J. Green, M.D. performed an assessment on July 23, 2001 (R. 178-85) and Nancy M. Wright, M.D. performed a second assessment on November 7, 2001. (R. 272-79.)  Based on their review of the medical records, Green and Wright concluded that Plaintiff could frequently lift/carry up to 10 pounds, occasionally lift/carry up to 20 pounds, walk/stand or sit for about six hours of an 8-hour workday, and occasionally climb ramps/stairs, balance, stoop, kneel, and crouch.  (R. 179-80, 273-74.)  Green found that Plaintiff should never crawl but Wright found no such limitation. (R. 180, 274.)  Green found that Plaintiff could push and/or pull without any limitation.  (R. 179.)  Wright found that Plaintiff could frequently use her right lower extremity for push/pull activities and her left lower extremity for unlimited push/pull activities.   (R. 273.)  Wright found that Plaintiff

should never climb ladders/ropes/ scaffolding.  Both Green and Wright found that

Plaintiff should avoid concentrated exposure to working at heights or around moving

machinery. (R. 182, 276.)

There are two psychological RFC assessments of record which were performed

by non-examining state agency psychologists.  James Mendelson, Ph.D. performed an

assessment on August 17, 2001. (R. 188-202) and Don F. Driggs, Ph.D. performed an

assessment on November 28, 2001 (R. 280-94.)  Based on their review of the medical

records, both Mendelson and Driggs concluded that Plaintiff's mental impairments --

affective and somatoform disorders -- are not severe impairments and result in only

minimal functional limitations.  (R. 188, 198, 280, 290.)

At the May 23, 2003 hearing, Plaintiff testified that she has fallen on several

occasions because her knee gives way and that she has been prescribed a four-prong

cane. (R. 377-78.) She testified that she uses the cane "almost constantly."  (Id.)

Plaintiff testified that she has constant severe pain in the right side of her back going

down into her hip and leg.  (R. 378-79.)  Plaintiff testified that she has constant

headaches and that she is often dizzy due to Meniere's disease.[25]  (R. 380.)  Plaintiff

testified that she was being treated for depression but that she was not currently taking

antidepressants because she could not afford them.  (R. 380-81.)  She further stated

that she cries a lot and that she sleeps three to four hours a night.  (*Id.*)  Plaintiff testified

that she would not be able to do any of her past jobs because she would not "be able to

---

[25] A disease of the inner ear associated with a dilatation of the membranous labyrinth and characterized by attacks of dizziness, ringing in the ears, deafness, peculiar movements of the eyes and vomiting.  *See* 4-M Attorneys' Dictionary of Medicine 2585.

deal with the public now, and I don't believe I would be able to sit long enough to do the necessary paperwork and computer work that needs to be done." (R. 385.)  Plaintiff testified that she could lift 20 pounds on some days, stand comfortably for 10 to 20 minutes, and walk for 5 to 10 minutes. (R. 386.)  She testified that she could sit for twenty minutes at most because her back and legs start to hurt. (R. 386-87.)

The ALJ determined that claimant suffers from fibromyalgia, low back pain with minimal objective findings, obesity, and status post right fracture of the patella in November 2000. (R. 15.)  The ALJ found that Plaintiff's mental impairments, affective and somatoform disorders were not severe impairments. (*Id.*)  In reaching this conclusion, the ALJ relied on the State Agency psychologists and accorded little weight to Dr. Cox's opinion that Plaintiff would be unable to sustain gainful employment. (*Id.*) The ALJ determined that, while these impairments were severe, Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (*Id.*)

The ALJ then determined that Plaintiff retained the physical RFC for light work. (R. 16-17.)[26]  In making this determination, the ALJ "accorded great weight" to the State Agency physicians (R. 16) and accorded lesser weight to the opinions of Dr. Smith and Dr. Stark, both of whom were Plaintiff's treating physicians.   The ALJ then found that

---

[26] The ALJ found that Plaintiff retained the RFC to frequently lift/carry up to 10 pounds, occasionally lift/carry up to 20 pounds, walk/stand or sit for about six hours of an 8-hour workday, and occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. (R. 18.)  The ALJ also found that Plaintiff could frequently use her right lower extremity for push/pull activities and her left lower extremity for unlimited push/pull activities. (*Id.*)  The ALJ found that Plaintiff should never climb ladders/ropes/ scaffolding, and she should avoid concentrated exposure to working at heights or around moving machinery. (*Id.*)

Plaintiff could perform her past relevant work as a data entry worker and a secretary in a doctor's office. (R. 17.)

## V. DISCUSSION

### A. The ALJ's finding that Plaintiff's depression is not a severe impairment is not based on substantial evidence.

Plaintiff contends that the ALJ erred by failing to find that her depression is a severe impairment at the second step of the sequential disability determination and then by failing to consider any limitation resulting from her depression in the RFC analysis at the fourth step of the sequential disability determination.[27] At the hearing, Defendant did not deny that the ALJ found that Plaintiff's depression is not a severe impairment at step two.

At the second step of the sequential disability determination, the ALJ must "consider the medical severity of [the claimant's] impairments."[28] In doing so, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills."[29] This is a threshold inquiry and only claims based on the most trivial impairments are rejected.[30] "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work,

---

[27] Although cast as an error at the second step in her brief, Plaintiff's counsel clarified at oral argument that she is challenging the ALJ at both steps two and four.

[28] See Wind v. Barnhart, 133 Fed.Appx. 684, 690 (11th Cir. 2005)(quoting Phillips v. Barnhart, 357 F.3d. 1232, 1237 (11th Cir. 2004).

[29] See id.

[30] See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).

irrespective of age, education or work experience."[31] A diagnosis is insufficient; instead, Plaintiff must show the effect of the impairment on her ability to work.[32]

The medical records show that Plaintiff has been diagnosed and treated for depression.  From July 1998 through June 2001, Plaintiff was treated for depression by physicians at Lake Primary Care Associates.  (R. 204-9, 216, 221, 223, 236-37.)  On October 30, 2001, Dr. Vu wrote that Plaintiff's various conditions including depression were "aggressive and debilitating."  (R. 203.)  From January 2001 through April 2003, Plaintiff was treated for depression by physicians at Community Primary Health Care Clinic.  (R. 341-42, 349-50, 353).  Moreover, Dr. Cox, who performed a consultative evaluation, diagnosed Plaintiff with Pain Disorder associated with both Psychological Factors and a General Medical Condition and Major Depression and noted that Plaintiff admitted to "passive suicidal ideation" and endorsed a number of "neurovegetative symptoms associated with depression" such as anergia, crying spells, and social withdrawal.  (R. 186-87.)  Dr. Cox opined that Plaintiff's reported pain and symptoms of depression "would likely preclude her from sustaining and maintaining gainful employment" and "[t]hat combined with her physical/medical status certainly seems to preclude competitive employment. . ."  (*Id.*)

The ALJ accorded "little weight" to Dr. Cox's assertion that Plaintiff would be unable to sustain gainful employment and stated:

> [Dr. Cox] based his opinion in part on the claimant's physical condition, but
> he lacks the credentials to assess the claimant's work-related restrictions

---

[31] Id.

[32] *See* Wind, 133 Fed.Appx. at 690 (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

> because of her physical condition.  Further, he based his opinion on the claimant's report of significant pain and symptoms of depression and ignored his own clinical findings that showed that the claimant was alert, oriented, cooperative, pleasant, and demonstrated an intact memory.

(*Id.*)

Plaintiff argues that the ALJ's stated reasons were not based on substantial evidence.  First, Plaintiff correctly argues that Dr. Cox was required to consider Plaintiff's physical condition in making his diagnosis of "Pain Disorder Associated with Both Psychological Factors and a General Medical Condition."[33] The diagnosis requires a finding that "both psychological factors and a general medical condition are judged to have important roles in the onset, severity, exacerbation, or maintenance of the pain . . ."  Accordingly,  Dr. Cox would have to consider Plaintiff's complaints of pain in making his diagnosis.

Second, Plaintiff contends that the ALJ failed to consider Dr. Cox's report as a whole when he found that Dr. Cox based his opinion on Plaintiff's report of significant pain and symptoms of depression and ignored his own clinical findings.    While Dr. Cox noted that Plaintiff was pleasant, cooperative, alert, oriented and demonstrated an intact memory (R. 186), the ALJ failed to explain how these observations are contrary to Dr. Cox's opinion that Plaintiff would not be able to sustain gainful employment.  Moreover, Dr. Cox found on mental status evaluation that Plaintiff "admitted to passive suicidal ideation", that she endorsed "a number of neurovegetative symptoms associated with depression, including anergia, crying spells, and social withdrawal", that she reported her mood as "down and out a lot" and that her affect was "tearful and crying as she

---

[33] *See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* (DSM-IV-TR), 503 (4th ed. 2000).

detailed her history." (R. 186-87.)  Dr. Cox also noted that Plaintiff's abilities to interact with others, maintain attention, concentration and pace, withstand the stress of a routine workday and adapt to change were low average.  (R. 187.)  Accordingly, the ALJ's stated reasons for according Dr. Cox's opinion "little weight" are not supported by substantial evidence.

As such, Plaintiff met the minimal burden to show that her depression is more than a "minimal" impairment that it would effect her ability to work.  Accordingly, the ALJ erred by finding at the second step of the sequential disability determination that Plaintiff's depression is not a severe impairment.

Alternatively, the ALJ erred at the fourth step because he failed to consider Plaintiff's depression in his RFC evaluation.  Based on the foregoing, Plaintiff's depression would clearly have some impact on her ability to work.  On remand, the ALJ should reconsider whether Plaintiff's depression is a severe impairment and should also reconsider what impact Plaintiff's depression would have on her ability to work.

> **B.    The ALJ's finding that Plaintiff retains the RFC to perform the exertional demands of light work is not based on substantial evidence.**

Plaintiff argues that the ALJ's finding that Plaintiff retains the RFC to perform the exertional demands of light work is not based on substantial evidence for two reasons. First, Plaintiff contends that the ALJ failed to properly consider the impact of Plaintiff's need for a cane on her ability to work. Second, Plaintiff argues that the ALJ improperly rejected the assessments by Plaintiff's treating physicians and instead, relied on the opinion of the State agency non-examining physicians.

With respect to Plaintiff's need for a cane, the ALJ found that Plaintiff's allegations that she was prescribed a cane by a physician at Lake Primary Health Care Center, was "not documented in the record and Dr. Stark's most recent progress note dated August 15, 2001 show a normal gait. . ." (R. 16.)  However, the record evidences that Plaintiff was prescribed a four-pronged cane on April 22, 2003. (R. 356.)[34]  In addition, Dr. Demmi noted that Plaintiff had an antalgic gait and was walking with a cane on April 9, 2001 (R. 150), Dr. Cox noted that Plaintiff "used a cane to assist in ambulation" on July 26, 2001 (R. 186), and the progress notes from Lake Health Primary Health Care Center state that Plaintiff "can't walk -- uses cane" secondary to osteoarthritis on June 27, 2002.  (R. 348.)  Accordingly, the ALJ's conclusion that Plaintiff did not use a cane was not supported by substantial evidence.

Plaintiff argues that Plaintiff's use of a cane is important because it would preclude her from meeting the requirements of light work.[35]  Specifically, Plaintiff contends that she would not be able to perform the required walking and standing for six hours a day and she would not have both arms free to lift ten pounds frequently and twenty pounds occasionally.  Because the ALJ concluded that Plaintiff did not use a cane, he did not consider what impact a cane would have on Plaintiff's abilities to walk, stand and lift weight.  As noted below, Social Security Ruling 96-9P states that the use

---

[34] This was one month before the May 23, 2003 administrative hearing in this matter.

[35] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 CFR §§404.1567(b); 416.967(b).

of a hand-held assistive device may impact a claimant's ability to perform even the minimal demands of sedentary work.

Defendant argues that even if the ALJ erred regarding Plaintiff's use of the cane, it was harmless error because the ALJ found that Plaintiff's past relevant work as a data entry clerk is performed in the national economy at the sedentary level.[36]   While Defendant's argument has some initial appeal it is unavailing.  As a general rule, if a person can perform light work then they can also perform sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.[37]  Social Security Ruling 96-9P recognizes that the use of a hand-held assistive device (i.e. cane) can impact the sedentary occupational base depending upon why the individual uses the cane.[38]   Thus, the ALJ must consider the particular facts of the case -- i.e., whether the cane is needed all the time, periodically, or only in certain circumstances; whether it is needed for distance or certain types of terrain.[39]  Moreover, the ALJ must consider whether Plaintiff would be able to meet the lifting requirements since she would not have both hands free while using the cane.

Additionally, sedentary work generally requires up to six hours of sitting in an 8-hour day.  Plaintiff testified at the hearing that she would not be able to do any of her

---

[36] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  The work is generally stationary at a sitting position, but a limited amount of walking and standing may be necessary -- i.e., generally sitting 6 hours out of an 8-hour workday and standing or walking 2 hours out of an 8-hour workday.  *See* 20 CFR §§404.1567(a),  416.967(a); Social Security Ruling 96-9P, 1996 WL 374185 (SSA 1996).

[37] *See* 20 CFR §§404.1567(b); 416.967(b).

[38] *See* Social Security Ruling 96-9P, 1996 WL 374185 (SSA 1996).

[39]  *See* id.

17

past jobs because she would not "be able to sit long enough to do the necessary paperwork and computer work that needs to be done." (R. 385.)  She further testified that she could sit for twenty minutes at most because her back and legs start to hurt. (R. 386-87.)  Moreover, as discussed below, Dr. Smith opined that Plaintiff should not do prolonged standing or sitting.  (R. 172.)  Thus, the ALJ must determine whether Plaintiff could sit for the significant portion of the workday.  Because the ALJ's finding regarding Plaintiff's use of a cane was not harmless error, the matter is due to be remanded to the Commissioner for reconsideration of Plaintiff's RFC in light of Plaintiff's use of a hand-held assistive device.

Plaintiff also argues that the ALJ erred in his RFC analysis by rejecting the assessments of Plaintiff's treating physicians and instead, relying on the opinion of the State agency non-examining physicians.  Plaintiff contends that the ALJ rejected the opinions of two of Plaintiff's treating physicians, Dr. Smith and Dr. Stark, without stating sufficient reasons for doing so.  In response, the Commissioner argues that the ALJ had good cause for discounting the opinions of Plaintiff's treating physicians.

It is well established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[40]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory

---

[40] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards, 937 F.2d at 583-584; Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[41]  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[42]

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[43]  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.[44]  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[45]

In the instant case, the ALJ explicitly rejected Dr. Smith's opinion that Plaintiff should do no prolonged standing or sitting.  (R. 172.)   The ALJ stated that he did not credit Dr. Smith's opinion because there "is no current basis for those restrictions, as

---

[41] 20 C.F.R. § 404.1527(d)(2).

[42] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[43] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[44] 20 C.F.R. § 404.1527(d).

[45] Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

the record shows minimal degenerative changes in the lumbar spine and recent evidence from the treating source, Dr. Stark, indicates that the claimant walks with a normal gait." (R. 16-17.)  However, Dr. Smith based his opinion (at least in part) on diagnostic tests showing that Plaintiff sustained a fracture to her right knee and he noted that she has bilateral knee pain due to the fracture. (R. 170-71.)  Moreover, there are diagnostic tests in the record documenting degenerative changes in Plaintiff's spine -- chronic degenerative changes at C5-C6 disc level (R. 254), spondylosis at C5-6 and to a somewhat lesser degree at C6-7 (R. 246) and spondylosis at C4-5 and reversal of lordosis (R. 242.)  Additionally, although Dr. Stark noted that Plaintiff had a normal gait this may or may not have any bearing on Plaintiff's ability to sit or stand for prolonged periods of time.  Accordingly, the ALJ failed to articulate sufficient reasons to reject the opinion of Dr. Smith.

The ALJ also discounted Dr. Stark's opinion that Plaintiff is "permanently disabled with Inflammatory Polyarthritis, Fibromyalgia and Diffuse Osteoarthritis." (R. 258.)  The ALJ's decision to discount the opinion of Dr. Stark was based in large part on the absence of definitive, objective diagnostic findings establishing Plaintiff's conditions. Rather than crediting Dr. Stark's opinion, the ALJ explicitly noted that in determining Plaintiff's RFC, he accorded great weight to the opinion of the non-examining state agency doctors.  (R. 16.)

Dr. Stark's opinion is consistent with his treatment notes.  Dr. Stark consistently diagnosed Plaintiff with inflammatory polyarthritis, fibromyalgia and diffuse osteoarthritis.  (R. 259-67.)  He charted the location of Plaintiff's hand, wrist, arm and knee pain and recorded findings of tender fibrocystic points, stiffness, back pain,

myalgia, fair to poor grip strength, paraspinal tenderness, fatigue and non-restorative sleep.  (R. 259-64, 266-67.)

Moreover, the ALJ failed to understand the nature of one of Plaintiff's conditions - - fibromyalgia.   The Eleventh Circuit has recognized that fibromyalgia is a unique disease that can be extremely difficult to diagnose.[46]  A diagnosis of fibromyalgia - literally meaning "pain in the muscles and the fibrous connective joints (the ligaments and tendons)" - depends mostly on a person's own reports of symptoms, namely pain.[47] Individuals with fibromyalgia face symptoms such as "pain all over," fatigue, disturbed sleep, stiffness, and multiple tender points throughout the body.[48]  Where, as here, the ALJ's decision is based, at least in part, on a "pervasive misunderstanding of the disease [fibromyalgia],"[49] there may be sufficient grounds for reversal.  Accordingly, because fibromyalgia "by its very nature lacks objective evidence," and the ALJ's decision to discount the opinion of Dr. Stark was based in large part on the absence of definitive, objective diagnostic findings establishing Plaintiff's fibromyalgia, the ALJ erred in discounting Dr. Stark's opinion without stating sufficient reasons for doing so.

Because the ALJ failed to articulate specific reasons supported by substantial evidence for his decision to reject the opinion of Dr. Smith and discount the opinion of Dr. Stark, this matter is due to be remanded to the Commissioner for proper

---

[46] *See* Moore v. Barnhart, 405 F.3d 1208, 1211-12 (11th Cir. 2005); Stewart v. Apfel, No. 99-6132, 2000 U.S. App. LEXIS 33214, at *7 (11th Cir. December 20, 2000).

[47] Id., at *7-8. See also Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (Judge Posner stated that "of greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective" and that "[t]here are no laboratory tests for the presence or severity of fibromyalgia.").

[48] Sarchet, 78 F.3d at 306.

[49] Id. at 307.

consideration of Dr. Smith and Dr. Stark's opinions as treating physicians.  On remand, the Commissioner should give substantial or considerable weight to the opinions of Dr. Smith and Dr. Stark or in the event the ALJ chooses to reject their opinions, the ALJ must articulate specific reasons based on substantial evidence for giving lesser weight to his opinions, in accordance with the law of the Eleventh Circuit.

## VI. CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to: (1) reconsider whether Plaintiff's depression is a severe impairment; (2) properly consider what impact Plaintiff's depression would have on her ability to work; (3) reconsider Plaintiff's RFC in light of Plaintiff's use of a hand-held assistive device; (4) properly consider the opinions of Plaintiff's treating physicians, Dr. Smith and Dr. Stark, and either give their opinions substantial or considerable weight, or articulate specific reasons based on substantial evidence for not giving their opinions such weight; and (5) conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 22, 2005.

GARY R. JONES
United States Magistrate Judge

Copies to:
        All Counsel